UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDSAY ALAN MARTIN,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

CASE NO. 2:22-CV-562-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff seeks judicial review under 42 U.S.C. § 405(g), of the Commissioner's denial of his applications for Title II disability insurance benefits ("DIB") and for Title XVI supplemental security income ("SSI").  Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. See Dkt. 2.  For the reasons below, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

1

<u>BACKGROUND</u>

2  On July 2, 2018, Plaintiff filed for DIB and SSI, alleging disability as of January 31,

3  2006.  *See* Dkt. 8, Administrative Record ("AR") 404-20.  The applications were denied upon

4  initial administrative review and on reconsideration.  AR 128-29, 150-51.

5  The ALJ held a hearing on February 14, 2018, and issued an unfavorable decision on

6  March 18, 2020.  AR 86-127, 177-95.  On September 22, 2020, the Appeals Council reversed

7  and remanded the case to the ALJ.  AR 198-99.  On October 19, 2021, the same ALJ held a new

8  hearing and subsequently denied Plaintiff's applications on November 3, 2021.  AR 12-46.

9  Plaintiff requested Appeals Council review of the ALJ's second decision, and the

10  Appeals Council denied review on March 15, 2022, making the ALJ's decision the

11  Commissioner's final decision.  AR 1.  Plaintiff now seeks review of the ALJ's November 2021

12  decision.

13

<u>STANDARD OF REVIEW</u>

14  This Court may set aside the Commissioner's denial of social security benefits if the

15  ALJ's findings are based on legal error or not supported by substantial evidence in the record as

16  a whole.  *See* 2 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)

17  (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

18

19

20

21

22

23

24

1

<u>DISCUSSION</u>

2     Plaintiff raises two issues for review, challenging:  (1) the ALJ's step two determination

3 declining to find his cervical radiculopathy[1] and/or muscle spasms to be severe impairments; and

4 (2) the ALJ's related step four determination discounting Plaintiff's subjective symptom

5 testimony regarding his cervical radiculopathy and/or muscle spasms and failing to add a more

6 stringent RFC limitation to his handling and fingering capacity.

7     At the outset, the Court notes that both of Plaintiff's claims concern symptoms, including

8 numbness, tingling, and pain in Plaintiff's upper extremities, that stem from a physical

9 impairment for which a precise diagnosis – cervical radiculopathy and/or muscles spasms --

10 remains unclear.  Plaintiff ultimately contends that the symptoms caused by this particular

11 physical impairment support an RFC limitation restricting him to the occasional handling and

12 fingering of items, contrary to the ALJ's finding that Plaintiff could engage in frequent handling

13 and fingering.  AR 23.  Plaintiff accurately notes that had the ALJ found that he was functionally

14 capable of only occasional handling and fingering and that a vocational expert ("VE") has

15 already testified that such a limitation would be "work preclusive" given Plaintiff's other RFC

16 limitations.  *See* AR 81-82.

17     Plaintiff began experiencing the symptoms at issue here in March 2019, nearly a year

18 prior to his first ALJ hearing.  AR 826, 828.  He complained to his treating physician, Dr. John

19 Tilley, of numbness in his hands and fingers and that when he sat for long periods of time, his

20 "right upper back [went] numb."  AR 826, 828.  Dr. Tilley ordered a cervical magnetic resonance

21

22

---

23 [1] "Cervical radiculopathy" is a "clinical condition resulting from compression of cervical nerve roots," which may then cause "pain, sensory deficits, motor deficits, diminished reflexes, or any combination of the above."  Sravisht Iyer & Han Jo Kim, *Cervical Radiculopathy*, National Library of Medicine (June 1, 2016),

24 https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4958381/.

imaging test ("MRI"), and in his related treatment notes, described the problem as "[c]ervical radiculopathy." AR 828. Plaintiff continued to suffer from the same symptoms through November 2019, at which point Dr. Tilley again diagnosed the "problem" as "cervical radiculopathy," and ordered physical therapy. AR 1718.

In January 2020, based on his "[n]eck pain with radicular upper back pain and tingling in all fingers," Plaintiff underwent the first MRI of his cervical spine. AR 1732. The MRI showed "C5-C6 spondylosis with left central disc osteophyte complex/protrusion," and "[m]ild to moderate central canal stenosis at C5-C6 with mild flattening of the left ventral cord." AR 1819. Following the MRI, Dr. Tilley then referred Plaintiff to an orthopedic physician, Dr. Kim Driftmier, at the Harborview Surgical Spine Clinic. AR 1817, 2045-49.

Meanwhile, one month later, at his first ALJ hearing in February 2020, Plaintiff testified that recent MRI results suggested that he was experiencing "issues going on in the upper portion of [his] spine." AR 104. As a result, he testified that he loses feeling in his hands for up to forty minutes at a time, which makes it difficult to grip things. AR 92, 99. Plaintiff explained that he is sometimes unable to write using a pen, to respond to text messages on a phone, or to press a button on a remote control. AR 100. In addition to the loss of feeling, Plaintiff stated that he experiences spasms that make him feel as if he is paralyzed or "being electrocuted" because he will just "lock up and can't move." AR 101. According to Plaintiff, the spasms begin around where his spine meets his shoulder in his upper back, and "throb[] back and forth." AR 102. He also noted that he is most likely to experience the spasms and the numbness if he sits down for a prolonged period of time. AR 105.

Later in February 2020, approximately one week after Plaintiff's first ALJ hearing, Dr. Driftmier examined Plaintiff and reviewed his medical records, including his January 2020 MRI.

1  AR 2048.  Dr. Driftmier concluded that Plaintiff was not suffering from cervical radiculopathy

2  but that his "somewhat debilitating back pain [was] caused by an intense trapezius muscle

3  spasm."[2]  AR 2048.  She opined that the cause of the spasms was "multifactorial," and included

4  his post-traumatic stress disorder ("PTSD"), anxiety attacks, and a past bike accident.  AR 2048.

5  Dr. Driftmier further stated that Plaintiff was "not a surgical candidate," but that he would

6  benefit from rehabilitative medicine.  AR 2048.

7         Weeks later, in March 2020, the ALJ issued his first decision denying Plaintiff's

8  applications for benefits.  AR 180-90.  However, the ALJ failed to address Plaintiff's January

9  2020 MRI or any of his cervical and upper extremity complaints, and, in part for this reason, in

10  September 2020, the Appeals Council reversed and remanded the case for a new hearing and

11  decision.  *See* AR 180-90, 199.

12         In particular, the Appeals Council found that the ALJ erred when he failed to consider

13  Plaintiff's January 2020 MRI, which it noted "may corroborate [Plaintiff's] neck and upper

14  extremity complaints that began in the spring of 2019."  AR 199.  On remand, among other

15  things, the Appeals Council ordered the ALJ to reconsider Plaintiff's RFC and to "obtain

16  additional evidence concerning [his] musculoskeletal . . .  impairments," including, "if warranted

17  and available, a consultative examination and medical source opinions about what [Plaintiff] can

18  still do despite the impairments."  AR 199.  Additionally, the Appeals Council noted that the

19  ALJ "may request the medical sources [to] provide additional evidence and/or further

20  clarification of the opinions."   AR 199.

21

22

23  _____

24  [2] The ALJ did not consider Dr. Driftmier's treatment record in his first decision.  *See* AR 195.

1    Plaintiff subsequently testified at the second hearing, which took place in 2021, that he

2    continues to suffer from symptoms related to the cervical radiculopathy and/or muscle spasms.

3    *See* AR 71 (asserting that the "severe muscle spasms and pains in my neck area and right

4    shoulder" "still cause[] me a lot of pain to this day").  Plaintiff added that due to the pain and

5    spasms, he is unable to reach anything above his head and that when he holds things with his

6    arms in an outstretched position, his hands will go numb.  AR 71.  He noted that when he is

7    getting groceries, he has to stop frequently because his hands "numb up," and he loses feeling

8    and cannot hold anything or pick anything up – sometimes for as long as twenty minutes.  AR

9    71-72.  The numbness will continue on and off again as long as he is utilizing his arms and

10   hands.  AR 72.

11   On remand, the ALJ failed to obtain additional medical opinions, a consultative

12   examination, or "further clarification," regarding the scope, intensity, and limitations associated

13   with Plaintiff's upper extremity impairments.  *See* AR 18, 25-28, 31-32, 34; *cf.* AR 198-99

14   (Appeals Council order).  Instead, in addition to the medical evidence, the ALJ again relied on

15   the only two existing medical opinions regarding Plaintiff's musculoskeletal impairments, both

16   from non-examining state agency consulting physicians, Drs. Paula Lantsberger and JD Fitterer.[3]

17   AR 32.  Both opinions were completed in September and December 2018, respectively, prior to

18   the spring 2019 onset of Plaintiff's cervical radiculopathy and/or muscle spasms and prior to the

19   Appeals Council's September 2020 remand order. [4]  AR 143-44,  169-71.  Both Drs. Lantsberger

20

21

22   [3] Plaintiff, who is represented, has not challenged the ALJ's treatment of the medical opinions; nor has Plaintiff challenged the ALJ's development of the record.  Accordingly, the Court declines to address the waived issues.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1007 (9th Cir. 2006).

23   [4] The Court acknowledges that what were previously considered "opinions" from state agency medical and

24   psychological consultants have now been relabeled as "prior administrative medical findings."  20 C.F.R. § 416.913(a)(5); *see also* Revisions to Rules, 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62564 (Sept. 9, 2016).

1    and Fitterer opined that Plaintiff was limited to light work with additional postural and

2    environmental limitations.  AR 143-44,  169-71.  In particular, absent any discussion, Drs.

3    Lantsberger and Fitterer opined that Plaintiff had no manipulative limitations.  AR 144, 171.

4         In his November 2021 decision, the ALJ held that Plaintiff's cervical radiculopathy was

5    not "severe" at step two because Dr. Driftmier had ruled it out as a diagnosis and "recorded

6    unremarkable findings."  AR 18.  At step four, the ALJ rejected Plaintiff's related subjective

7    symptom testimony as "not entirely consistent with the medical evidence and other evidence in

8    the record."  AR 25.  The ALJ also found Dr. Lantsberger's and Fitterer's 2018 opinions

9    persuasive at step four, stating that they were consistent with the record and Plaintiff's activities,

10   including Dr. Driftmier's February 2020 evaluation and treatment notes.[5]  AR 32.  In assessing

11   Plaintiff's RFC, the ALJ concluded that while Plaintiff "cannot perform overhead reaching, [h]e

12

13

14   However, because "prior administrative medical findings" continue to be treated the same as other medical opinions,
     for clarity, the Court continues to refer to the "prior administrative medical findings" as "opinions" throughout this
     Order.  See 20 C.F.R. § 404.1520c (considering "prior administrative medical findings" in the same manner and
15   using the same factors as "medical opinions"); see also 81 Fed. Reg. 62560-01, at 62564 ("We would consider and
     articulate our consideration of prior administrative medical findings using the same factors we use to consider
16   medical opinions from medical sources.").

17   [5] While Plaintiff refers to Dr. Driftmier's observations as an "opinion," the Court notes that, unlike Drs.
     Lantsberger's and Fitterer's opinions, the ALJ did not evaluate the persuasiveness of Dr. Driftmier's "opinion"
18   under the regulations governing medical opinions, presumably because Dr. Driftmier's treatment notes did not
     constitute a "medical opinion" pursuant to 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  See 20 C.F.R. §§
     404.1520c(a)-(c), 416.920c(a)-(c) (requiring ALJ to evaluating medical opinions based on: 1) supportability; 2)
19   consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors")  In 2017, the Social Security
     Administration ("SSA") considerably revised its definition of "medical opinion."  The updated regulations define a
20   "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [their]
     impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their "ability to
21   perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling or
     other physical functions . . . ." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  In revising the definition of "medical
     opinion," the SSA recognized that "[d]iagnoses and prognoses do not describe how an individual functions" and that
22   although the SSA considers a claimant's statements about his or her symptoms, "[a] more appropriate focus of
     medical opinions would be perspectives from medical sources about claimants' functional abilities and limitations."
     81 Fed. Reg. at 62,562; see also 20 C.F.R. § 416.913(a)(2), (3).  Thus, a medical opinion must discuss both a
23   claimant's limitations and "what [the claimant] is still capable of doing" despite those limitations, which Dr.
     Driftmier's February 2020 notes did not do.  See id.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

can perform frequent reaching at or below the shoulder level."  AR 23.  The ALJ also found that Plaintiff "can perform frequent handling and fingering."  AR 23.

**I.       Plaintiff's Symptom Testimony**[6]

The ALJ rejected Plaintiff's testimony regarding his "upper extremity function[ing]" for three reasons, concluding that it was:  (1) inconsistent with the overall record evidence, AR 26; (2) contradicted by his own testimony, AR 30; and (3) inconsistent with Plaintiff's daily activities, AR 29-30.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *accord Smartt v. Kijakazi*, No. 21-16009, 2022 WL 16986313, at *7 (9th Cir. Nov. 17, 2022) (confirming that the "clear and convincing" standard continues to apply).  As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell*, 161 F.3d at 601).

A.       Longitudinal Record

In discounting Plaintiff's pain and symptom testimony as contrary to the overall medical record, the ALJ relied primarily on Dr. Driftmier's February 2020 visit notes, the allegedly sporadic nature of Plaintiff's complaints regarding his neck and upper extremities, and on Plaintiff's "conservative" medical treatment.  AR 26.  In doing so, the ALJ ignored Dr.

---

[6] The Court addresses first Plaintiff's second claim regarding his symptom testimony because adjudication of the issue impacts the Court's resolution of Plaintiff's additional claim regarding the ALJ's step two findings.

1  Driftmier's alternate diagnosis, mischaracterized the record, and faulted Plaintiff for following

2  Dr. Driftmier's own recommendation that his condition be treated conservatively.  *See* AR 2048.

3        Plaintiff established an impairment giving rise to his numbness, tingling, and related pain

4  -- regardless of whether that impairment was labeled by the ALJ as "cervical radiculopathy,"

5  muscle spasm, or something else entirely.  As noted, disagreement existed among Plaintiff's own

6  physicians regarding the precise diagnosis, with Dr. Driftmier diagnosing a muscle spasm, and

7  Plaintiff's treating physician, Dr. Tilley, diagnosing cervical radiculopathy.  *See* AR 2048; *see*

8  *also* AR 1815 (In March 2020, following Dr. Driftmier's diagnosis of a trapezius muscle spasm,

9  Dr. Tilley continues to refer to Plaintiff's "[c]ontinued neck, right shoulder, . . . upper back pain

10  and thoracic muscle spasms" as "cervical radiculopathy.").

11        While Dr. Driftmier did not believe Plaintiff's symptoms were caused by cervical

12  radiculopathy, she nevertheless acknowledged the "somewhat debilitating . . . pain" suffered by

13  Plaintiff.  AR 2048.  Moreover, although Plaintiff did not report hand numbness during his single

14  visit with Dr. Driftmier, he indeed reported it on numerous other occasions to Dr. Tilley and his

15  physical therapists.  AR 1660-94, 827-29, 1718, 1815.  Significantly, Plaintiff's multiple medical

16  records from Dr. Tilley, along with Plaintiff's 2020 MRI and CT scans, and 2019 physical

17  therapy records, demonstrated that Plaintiff's symptoms were very real – regardless of whether

18  they were termed "cervical radiculopathy" or "muscle spasm."  AR 1815-18, 1660-94, 827-29,

19  1718; *see also* AR 1903 (September 2020 CT scan of Plaintiff's cervical spine following a

20  bicycle accident revealed "straightening of [the] cervical spine").

21        Finally, the ALJ in essence faulted Plaintiff for following Dr. Driftmier's 2020

22  recommendation that he treat his condition conservatively.  AR 26, 2048 (noting that plaintiff

23  was not a surgery candidate).  While conservative treatment may be a "sufficient [reason] to

24

1   discount a claimant's testimony regarding severity of an impairment," *Parra v. Astrue*, 481 F.3d

2   742, 750-751 (9th Cir. 2007), it was error for the ALJ to rely extensively on the substance of Dr.

3   Driftmier's diagnosis, but then to fault Plaintiff for following Dr. Driftmier's advice.

4          For these reasons, this rationale is not supported by substantial evidence.

5          B.      Contradictions/Inconsistent Statements

6          The ALJ also found that the veracity of Plaintiff's related symptom testimony was

7   diminished by allegedly contradictory statements Plaintiff made while testifying.  AR 31.

8          Because Plaintiff does not have a driver's license, he testified that he must walk or take a

9   bus when he goes to the grocery store twice per month.  AR 56-57.  In response to the ALJ's

10  questions, Plaintiff testified that "to get some type of exercise," he walks the nine blocks to the

11  grocery store.  AR 58.  Plaintiff explained that he brings a single bag, which he uses to

12  consolidate and carry home the groceries he shops for twice a month.  AR 58.  The single bag

13  typically weighs under thirty-five pounds.  AR 58.

14         The ALJ found that the above testimony was inconsistent with Plaintiff's follow-up

15  testimony during which Plaintiff explained that when he walks home from the grocery store, he

16  is required to stop multiple times because his hands "go numb" and he loses "feeling in [his]

17  fingers and most of [his] hands."  AR 71.

18         There is no contradiction in the two excerpts.  Therefore, this reason is likewise not

19  sufficiently specific, clear, and convincing, to undermine Plaintiff's related testimony.

20         C.      Daily Activities

21         Finally, the ALJ similarly found that Plaintiff's symptom testimony regarding numbness

22  and pain was inconsistent with his routine activity of grocery shopping.  AR 29-30.  The ALJ

23  reasoned that "if [Plaintiff's] hand issues were as symptomatic as he asserted, he would have

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1  taken that bus that was available instead of walking." AR 29. The ALJ also noted that Plaintiff

2  regularly rode a bike, which the ALJ found was inconsistent with his symptom testimony. AR

3  30.

4      An ALJ may reject a plaintiff's testimony based upon daily activities that either

5  contradict his testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495

6  F.3d 625, 639 (9th Cir. 2007). However, "the mere fact that a plaintiff has carried on certain

7  daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

8  in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260

9  F.3d 1044, 1050 (9th Cir. 2001).

10      Here, Plaintiff testified that his grocery shopping trips were limited to twice a month. AR

11  57. He explained that he walked in an attempt to get some exercise, even if that meant stopping

12  multiple times given his symptoms. AR 58, 71-72. As for riding his bike, Plaintiff clarified that

13  he does not go on any "big adventures" with his bike, and "only take[s] it out for short spurts,"

14  such as when he needs to go to "the corner store" or "to a friend's house down the street." AR

15  59. The Ninth Circuit has held that "[d]isability claimants, [like Plaintiff,] should not be

16  penalized for attempting to lead normal lives in the face of their limitations," which is what

17  Plaintiff was attempting to do. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

18  Accordingly, this reason was not sufficiently specific, clear, or convincing, either.

19      In sum, the ALJ's rejection of Plaintiff's testimony regarding his upper extremity

20  numbness, tingling, and pain, was not supported by substantial evidence regardless of whether

21  the symptoms were caused by cervical radiculopathy or muscle spasms. Remand is required for

22  the ALJ to reconsider and accord appropriate weight to Plaintiff's symptom testimony.

23

24

## II.      The ALJ's Step Two Findings

Plaintiff also contends that the ALJ erred in concluding that his cervical radiculopathy and/or muscle spasms did not constitute severe impairments at step two.  For the reasons below, the Court agrees.

At step two of the five-step sequential evaluation for disability claims, an impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a).  "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen*, 80 F.3d at 1290 (quotation omitted).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (quotations omitted).  A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, and the ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290 (citations omitted).

In practice, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.  "[Step two] is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

As noted, the ALJ found that Plaintiff's cervical radiculopathy was not "severe" at step two based largely on Dr. Driftmier's February 2020 notes "rul[ing] out cervical radiculopathy." *See* AR 18 (asserting that "the evidence does not establish a diagnosis of cervical spinal radiculopathy").  This finding is not supported by substantial evidence for two reasons.  First, as

1   Plaintiff points out, his treating doctor diagnosed cervical spinal radiculopathy and noted that

2   Plaintiff had symptoms consistent with the condition.  *See AR* 828-29, 1718.  Second, in making

3   this step two determination, the ALJ overlooked Dr. Driftmier's alternative muscle spasm

4   diagnosis and failed to address whether Plaintiff's muscle spasms constituted a severe

5   impairment.

6        The objective medical evidence, along with Plaintiff's symptom testimony, clearly

7   established more than a "slight abnormality."  *See AR* 71-72, 92-105, 828-29, 1718, 1732, 1815,

8   1903.  Thus, the ALJ should have found that Plaintiff's physical impairment – whether labeled

9   "muscle spasms" or "cervical radiculopathy" – constituted a severe impairment at step two.  *See*

10  *Wingo v. Berryhill*, No. 3:16-CV-05619-DWC, 2017 WL 1422000, at *3 (W.D. Wash. Apr. 21,

11  2017) (ALJ erred in finding Plaintiff's back impairment was not severe where ALJ failed to

12  discuss probative evidence without explanation).

13       Having determined that the ALJ erred at step two, this Court must then determine

14  whether the error was harmless.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v.*

15  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Any failure to classify an impairment as non-

16  severe at step two is harmless if the ALJ subsequently considered the limitations posed by the

17  impairment at a later step in the inquiry.  *See McGuire v. Kijakazi*, No. 20-35898, 2021 WL

18  5861284, at *1 (9th Cir. Dec. 7, 2021) (finding that the ALJ's error at step two was harmless

19  since the ALJ considered the non-severe impairment later in the inquiry); *Tadesse v. Kijakazi*,

20  No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021) ("Although an error at step two

21  may be considered harmless where the ALJ moves to the next step in the analysis, the decision

22  must reflect that the ALJ considered any limitations posed by the impairment at either step four

23  or step five.").

24

1    Here, the Court has already concluded that, for the reasons above, the ALJ erred in

2    rejecting Plaintiff's symptom testimony.  As a result of that error, the ALJ did not fully consider

3    at step four the limitations posed by Plaintiff's cervical radiculopathy or muscle spasms, and the

4    Court cannot conclude that the step two error was harmless.  Proper consideration of Plaintiff's

5    related limitations at step four may have impacted the ALJ's RFC findings regarding Plaintiff's

6    functional capacity for handling and fingering; as previously noted, the VE testified that a

7    limitation to occasional handling and fingering would have resulted in a finding that Plaintiff was

8    disabled.  *See* AR 81-82.

9    On remand, after reconsidering Plaintiff's symptom testimony, the ALJ is therefore

10   required to reassess how the limitations posed by Plaintiff's cervical radiculopathy/and or muscle

11   spasms impact the ALJ's RFC assessment at step four as well.

12   **III.    Remedy**

13   "'The decision whether to remand a case for additional evidence, or simply to award

14   benefits[,] is within the discretion of the court.'"  *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th

15   Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  If an ALJ makes

16   an error and the record is uncertain and ambiguous, a court should remand to the agency for

17   further proceedings.  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).  Likewise, if a court

18   concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for

19   further consideration.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

20   It is not clear from the record here that the ALJ would be required to find Plaintiff

21   disabled if all of the evidence were properly evaluated.  Therefore, remand is appropriate.  As

22   discussed above, on remand, the ALJ must: (1) reconsider Plaintiff's symptom testimony as

23   relates to his cervical radiculopathy and/or muscle spasms; and (2) following reconsideration of

24

1 | Plaintiff's symptom testimony, reassess how the limitations posed by Plaintiff's cervical

2 | radiculopathy/and or muscle spasms impact Plaintiff's RFC, with particular focus on Plaintiff's

3 | functional capacity for handling and fingering.

4 | <u>CONCLUSION</u>

5 | Based on the foregoing discussion, the Court finds the ALJ erred when he determined

6 | Plaintiff to be not disabled.  The Commissioner's decision to deny benefits therefore is

7 | REVERSED, and this matter is REMANDED for further administrative proceedings consistent

8 | with this order.

9 | Dated this 28th day of November, 2022.

David W. Christel
United States Magistrate Judge